IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| BYRON A. COOPER,<br><br>Plaintiff,<br><br>vs.<br><br>ANDREW M. SAUL, Commissioner of Social Security,<br><br>Defendant. | CIVIL NO. 19-00538 JAO-RT<br><br>ORDER AFFIRMING IN PART AND REVERSING IN PART DECISION OF COMMISSIONER OF SOCIAL SECURITY AND REMANDING FOR FURTHER PROCEEDINGS |

**ORDER AFFIRMING IN PART AND REVERSING IN PART DECISION OF COMMISSIONER OF SOCIAL SECURITY AND REMANDING FOR FURTHER PROCEEDINGS**

Plaintiff Byron A. Cooper ("Plaintiff") appeals Defendant Andrew Saul, Commissioner of Social Security's ("Commissioner") denial of his application for social security disability insurance benefits.  He asks this Court to reverse the Commissioner's decision and remand this case for a decision in accordance with the applicable law.  For the reasons stated below, the Court AFFIRMS in part and REVERSES in part the Commissioner's decision and REMANDS this case for further administrative proceedings consistent with this Order.

ADMINISTRATIVE PROCEEDINGS

In June 2018, Plaintiff applied for disability insurance benefits. Administrative Record ("AR") at 162.  The Social Security Administration ("SSA") denied his application.  *Id.* at 96–99.  Plaintiff sought reconsideration and the SSA again denied his request.  *Id.* at 100–03.

At Plaintiff's request, the Administrative Law Judge ("ALJ") convened a hearing.  On May 28, 2019, the ALJ issued his decision.  He determined that Plaintiff's severe impairments include:  "migraines; fibromyalgia; depressive disorder; somatic disorder; posttraumatic stress disorder (PTSD); plantar fasciitis; [and] degenerative disc disease (20 CFR 404.1520(c))."  *Id.* at 19.  While acknowledging that Plaintiff has severe physical impairments, he concluded that the impairments—alone or combined—"do not meet the criteria of any listed impairments described in the *Listing of Impairments*" in 20 C.F.R., subpt. P, app. 1.  *Id.* at 20.

With respect to Plaintiff's residual functional capacity ("RFC"), the ALJ opined:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except he could lift or carry 10 pounds occasionally and less than 10 pounds frequently; he must be allowed to alternate positions every 30 minutes; he could never kneel, crouch, crawl, or climb ladders, ropes, or scaffolds; he could occasionally balance, stoop, or climb ramps or stairs; he should

2

> avoid concentrated exposure to hazardous machinery and unprotected heights; he is limited to simple, routine, and repetitive tasks; he could have occasional changes in the work setting; he could not perform production-rate pace work; he could have occasional interaction with the public and frequent interactions with coworkers.

*Id.* at 21.  In reaching this determination, the ALJ "considered all symptoms and the extent to which these symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence." *Id.*  He "also considered the medical opinion(s) and prior administrative medical finding(s)." *Id.*  The ALJ ultimately concluded that Plaintiff is not disabled.  *Id.* at 26.

The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review of the decision.  *Id.* at 1–3.

## STANDARD OF REVIEW

The decision of the Commissioner must be affirmed "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013) (citation omitted). "Substantial evidence means more than a mere scintilla, but less than a preponderance.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted).  To determine whether there is substantial evidence to support the ALJ's decision, a court "must consider the entire record as a whole,

weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citation and omitted). If the record, considered as a whole, can reasonably support either affirming or reversing the ALJ's decision, the decision must be affirmed. *See Hiler v. Astrue*, 687 F.3d 1208, 1211 (9th Cir. 2012); *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) ("'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." (citation omitted)); *Burch*, 400 F.3d at 679. The ALJ, as the finder of fact, is responsible for weighing the evidence, resolving conflicts and ambiguities, and determining credibility. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

## DISCUSSION

Plaintiff appeals the ALJ's determination that he is not disabled. To be eligible for disability insurance benefits, a claimant must demonstrate that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In addition, a claimant suffers from a qualifying disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education,

and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Only disabilities existing before the date last insured establish entitlement to disability insurance benefits. *See Sam v. Astrue*, 550 F.3d 808, 810 (9th Cir. 2008) (citing *Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984) (per curiam)).

A five-step analysis is employed in evaluating disability claims.

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, App. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the residual functional capacity ("RFC") to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch*, 400 F.3d at 679; *see* 20 C.F.R. § 404.1520. It is the claimant's burden to prove a disability in steps one through four of the analysis. *See Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue her past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citation omitted).

5

Plaintiff challenges the ALJ's failure to (1) include the limiting effects of his migraines in the RFC determination and (2) consider his testimony concerning the limiting effects of his migraines.  Opening Br., ECF No. 9 at 8.

A.      Applicable Legal Standard

In his Reply Brief, Plaintiff argues that legal error *or* substantial evidence applies and that the ALJ legally erred.  Plaintiff cites *Garrison v. Colvin*[1] for the proposition that "[a]n ALJ's disability determination should be upheld unless it contains legal error or is not supported by substantial evidence."  759 F.3d at 1009 (citations omitted).  Based on this, Plaintiff asserts that legal error (versus substantial evidence) is the applicable standard here, which the Commissioner fails to apply and address.  *See* Reply Br., ECF No. 12 at 1 ("While the substantial evidence standard is more favorable to the Commissioner, the Commissioner does not argue the legal error standard should not be applied, but rather ignores it completely.").  However, in doing so, Plaintiff conflates "legal error" with the issue of whether, as a matter of law, the ALJ erred because substantial evidence does not support his decision.

---

[1]  In the Opening Brief, Plaintiff cites *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986) for this proposition.

The other cases cited by Plaintiff involve the erroneous application of law and/or demonstrate that when reviewing the ALJ's findings, the substantial evidence standard applies.  *See Delgado v. Heckler*, 722 F.2d 570, 574 (9th Cir. 1983) (reversing the ALJ's determination that the plaintiff's impairment was not severe because it was not based on substantial evidence); *Benitez v. Califano*, 573 F.2d 653, 656–57 (9th Cir. 1978) (reversing the district court's grant of the Commissioner's motion for summary judgment because the ALJ incorrectly interpreted the applicable regulation, i.e., relied upon an erroneous legal premise, in deciding that the plaintiff was not disabled); *Flake v. Gardner*, 399 F.2d 532, 540–41 (9th Cir. 1968) (vacating the entry of summary judgment for the Secretary because although the hearing examiner's findings were supported by substantial evidence, the examiner may have failed to apply the then applicable legal standards).

More recent Ninth Circuit cases continue to limit legal error to instances where the ALJ applies an incorrect legal standard or fails to comply with the governing legal standard(s).  *See Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 929 (9th Cir. 2014) (holding that "[i]t was legal error for the ALJ not to ensure that the record included a complete set of IQ test results that both the ALJ and the

reviewing experts could consider");[2] *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) (finding that "[t]he ALJ erred by effectively requir[ing] objective evidence for a disease that eludes such measurement." (second alteration in original) (citation and internal quotation marks omitted)); *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1014 (9th Cir. 2003) (remanding for further proceedings to allow development of the record because the ALJ did not comply with 42 U.S.C. § 1382c(a)(3)(I)'s requirement that a qualified individual evaluate the case).  And even though a denial of benefits may be set aside when it is based on legal error, an ALJ's decision cannot be reversed "for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation and internal quotation marks omitted).

　　Unlike these cases, Plaintiff's challenges are based on the ALJ's purportedly erroneous factual findings and the evidentiary record, not the legal standards he

---

[2]  The *Garcia* court reasoned that (1) in 20 C.F.R. § 404, subpt. P, app. 1, listing 12.00, "the SSA has recognized that standardized intelligence test results are essential to the adjudication of all cases of intellectual disability,' except where a claimant is unable to complete such testing [and] . . . when a claimant's impairment is compared to the criteria in Listing 12.05, three of the four criteria for intellectual disability rely in whole or in part on IQ test scores" and (2) "the regulations promulgated by the SSA demonstrate that the Administration, based on its considerable expertise, has determined that it is essential for complete—rather than partial—sets of IQ scores to be used in evaluating intellectual disability."  768 F.3d at 931 (internal quotation marks and original alterations omitted).

applied.  To wit, Plaintiff does not argue that the ALJ's erroneous application of the law caused him to make incorrect findings.[3]  Plaintiff cannot avoid application of the substantial evidence standard altogether by attempting to characterize his arguments as purely legal errors.  Reply Br. at 4 ("[T]he legal error discussed in the Opening Brief at length is the ALJ violated the requirements of his own rules, specifically SSR 96-8p, and his regulations at 20 C.F.R. § 404.1545(e) requiring he consider and include all limitations from Byron's impairments, to include his severe impairments, in his RFC.").

B.    Limiting Effects of Plaintiff's Migraines in the RFC Finding

Plaintiff argues that the ALJ's failure to consider his migraines in the RFC assessment, even though the ALJ found the migraines to be a severe impairment at step two, amounts to reversible legal error.  Opening Br. at 10–12.  The Commissioner counters that Plaintiff, who bears the burden of showing that the RFC should be more limiting than determined by the ALJ, has not identified any functional restrictions from the migraines in the medical source opinions. Answering Br., ECF No. 11 at 10–11.

Where, as here, the ALJ determined that Plaintiff's migraines were a severe impairment, "all medically determinable impairments must be considered in the

---

[3]  At the hearing, Plaintiff's counsel conceded that the issues could appropriately be evaluated under the substantial evidence standard as well, and that the Ninth Circuit addresses appeals under both standards.

remaining steps of the sequential analysis." *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012) (quoting *Orn*, 495 F.3d at 630).  However, "[t]he regulations guiding the step-two determination of whether a disability is severe is merely a threshold determination of whether the claimant is able to perform his past work . . . [and] a finding that a claimant is severe at step two only raises a prima facie case of a disability." *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007) (citation omitted).  Moreover, the existence of a severe impairment does not necessarily "correspond to limitations on a claimant's ability to perform basic work activities." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228–29 (9th Cir. 2009) (rejecting the claimant's argument that "a severe impairment, by definition, inhibits a claimant from engaging in 'basic work activities,' and the ALJ's statement of her RFC does not capture that limitation").  Nor does it sufficiently establish a disability.  *See Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) (citation omitted).  It is the claimant's burden to prove a disabling impairment, and he "must show that he is precluded from engaging in not only his 'previous work,' but also from performing 'any other kind of substantial gainful work' due to such impairment."  *Id.* (citation omitted).

Here, the record is replete with references to Plaintiff's migraines.  But noticeably absent from the record is evidence that the migraines impacted

Plaintiff's ability to work.  According to Plaintiff, the ALJ violated the requirements set forth in Social Security Ruling ("SSR") 96-8p and 20 C.F.R. § 404.1545(e), which require him to consider and include all limitations from Plaintiff's impairments, including severe impairments.  Neither of these provisions require the ALJ to address the limitations caused by each severe impairment individually, along with their respective impacts on the RFC, and Plaintiff has not identified any authority that does.[4]  Plaintiff premises his appeal on the ALJ's failure to expressly address limitations caused by his migraines, but the ALJ did not separately address the limitations of any of Plaintiff's seven severe impairments.  Adopting Plaintiff's logic, the absence of express reference to each severe impairment's impact on the RFC means the ALJ failed to consider any of

---

[4]  Plaintiff's reliance on SSR 96-8p is unavailing.  It provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).  In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.  The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996) (footnote omitted).

11

them in formulating the RFC.  At the hearing, Plaintiff's counsel admitted that she did not review the decision to confirm whether the ALJ examined each severe impairment's effect on the RFC; Plaintiff's only concern is that the ALJ did not address his migraines, which his counsel describes as dispositive.

The evidence relied upon by the ALJ demonstrates that Plaintiff's migraines could be controlled with medication.  Plaintiff's allegation that the ALJ disregarded his migraines in the RFC is therefore unfounded.[5]  In his decision, the ALJ cited opinion evidence from State agency consultants:

> In September 2018, B. Young, M.D., a State agency consultant, found that the claimant has mild limitations in ability to understand, remember, or apply information, moderate limitations in ability to interact with others, moderate limitations in ability to concentrate, persist, or maintain pace, and mild limitations in ability to adapt or manage oneself (Exhibit 2A). Dr. Young opined that the claimant had insignificant to moderate

---

[5]  Plaintiff cites *Lewis v. Comm'r of Soc. Sec. Admin.*, 293 F. App'x 495 (9th Cir. 2008), for the proposition that an ALJ commits reversible legal error when he or she omits a severe impairment from the RFC finding.  His reliance is misplaced because the ALJ here did not fail to include limitations for Plaintiff's migraines in the RFC.  Further, not only is *Lewis* an unpublished disposition, it is inapposite. There, in the underlying district court action, the plaintiff argued that the RFC assessment was inaccurate not because the ALJ failed to consider her headaches altogether, but "because he improperly assessed her credibility, improperly rejected her testimony, improperly addressed medical evidence and failed in his duty to develop the record."  *Lewis v. Barnhart*, Civil No. 05-743-TC, 2006 WL 8451797, at *2 (D. Or. May 22, 2006), *rev'd and remanded by Lewis*, 293 F. App'x 495. The *Lewis* court held that "[t]he ALJ failed to include limitations reflecting *the severity* of the migraine headaches in Lewis's residual functional capacity (RFC) assessment and in the hypothetical posed to the VE upon which the ALJ relied." *Id.* at 496–97 (citation omitted) (emphasis added).

limitations with sustained concentration and persistence; he has minimal to moderate limitations with social interactions (Exhibit 2A).   In November 2018, R. Torigoe, Ph.D., a State agency consultant, opined that the claimant has the same limitations provided by Dr. Young (Exhibit 4A). . . .

In September 2018, N. Shibuya, M.D., a State agency consultant, opined that the claimant could perform light work except he could occasionally balance, stoop, kneel, crouch, crawl, or climb ladders, ropes, scaffolds, ramps, or stairs; he has mild hearing loss in both ears and must avoid concentrated exposure to noise; he must avoid concentrated exposure to fumes, odors, dusts, gases, or poor ventilation (Exhibit 2A).   In November 2018, S. Lau, M.D., a State agency consultant, opined that the claimant had the same limitations provided by Dr. Shibuya (Exhibit 4A).

AR at 24.  Although the ALJ weighted the preceding opinions as "somewhat persuasive because they were generally consistent with the record at the time," he ultimately concluded that "evidence available at the hearing level indicates that the claimant's impairments require the above [RFC]."  *Id.*  In other words, the ALJ found Plaintiff to have *greater* limitations than those identified in the opinions, based on later-presented evidence.

Significantly, the consultants addressed Plaintiff's migraines and indicated that the migraines could be controlled with medication.  AR at 64 ("Migraines controlled with meds.  Daily headaches with migraine exacerbations 1–2x/week.  Treated with prn imitrex in the past, recently started on prophylaxis.  No need for MD intervention to abort them."); *id.* at 67 ("Migraines adequately controlled without need for MD intervention."); *id.* at 81 ("Reported H/A frequency varies

13

from 1–2x/week to 2x/month"); *id.* at 86 ("Migraines adequately controlled without need for ED intervention."). This is substantial evidence supporting the ALJ's decision. Because the ALJ cited the consultants' findings and opinions in deciding that they were somewhat persuasive, *id.* at 24, and these opinions cited and considered Plaintiff's migraines, the Court need not speculate about whether migraines factored into the RFC.

Plaintiff relies on selective portions of the record to support his assertion that he has incapacitating migraines from multiple times per week to multiple times per month. Opening Br. at 12 (citing AR at 356, 369, 388, 396, 412, 583, 688). However, he neglects to acknowledge that some of the referenced progress notes also reveal that he took medication, with some success, to address the migraines. *See*, *e.g.*, AR at 356 (noting Plaintiff suffers migraines about one to two times per week and 50mg of imitrex offers him mild benefits and no side effects; 100mg dosage of Imitrex "only a little bit effective");[6] *id.* at 369 ("migraines about 1 time[] a week—'incapacitates me'"); *id.* at 388 ("He reports that he is having a migraine every 1–2 weeks. Imitrex at 100mg has been more helpful. He is not really using compazine.");[7] *id.* at 583 ("Headaches and migraines 2x a month with daily fogginess in the morning"); *id.* at 688 ("Migraines 1–2 times a week.

---

[6] Page 396 of the AR contains the same summary as page 356.

[7] Page 412 of the AR contains the same summary as page 388.

Tension HAs 4–5 times a week.").  Portions of the same progress notes, uncited by

Plaintiff, state:

> Chronic daily headaches with migranous exacerbations about  1–
> 2 X times a week. . . .  50mg imitrex with mild benefit but no
> side effects. . . .
>
> -    imitrex 100mg works  better—tolerated—Be  more
> aggressive—rarely uses it
>
> -    sub q imitrex also emore [sic] effective but feels anxious
> and drowsiness but for short time 30–45 mins.  Use whn [sic]
> migraien sare sevre [sic]

AR at 634.  Plaintiff even reported infrequent migraines in progress notes cited by

the ALJ.  *Id.* at 639.  The foregoing evidence is consistent with the consultants'

opinions, which the ALJ deemed "somewhat persuasive."  Given the ALJ's

reliance on opinions factoring Plaintiff's migraine history and treatment, and the

reasonable inferences drawn therefrom, Plaintiff's contention that the ALJ did not

consider his migraines in the RFC is without merit.  *See Rounds v. Comm'r Soc.*

*Sec. Admin.*, 807 F.3d 996, 1002 (9th Cir. 2015)  ("[I]f 'the evidence is susceptible

to more than one rational interpretation, we must uphold the ALJ's findings if they

are supported by inferences reasonably drawn from the record.'" (citation

omitted)).

Moreover, at the hearing, Plaintiff testified about his tension and migraine

headaches:

> Q      Well, tell me about your headaches.  How often are you getting those?
>
> A      I feel like I get tension headaches multiple times a week, especially when—when I leave the house.  When the weather changes I wake up with migraines.  A lot of times it makes me nauseous and I vomit.
>
> Q      Do you have headaches that actually keep you in bed, or are you able to function?
>
> A      Oh, yeah, there's times like when I kind of want to pull over, but I just have to fight to just get home.  I try to like kind of go in a dark room and put a cold wash rag on.  Normally I vomit when it's a migraine.
>
> Q      How often do you get migraines?
>
> A      Once every week or two where it gets bad.  The tension headaches is like three to four times a week.

AR at 48–49.  His testimony did not reveal severe limitations inconsistent with the RFC or evidence relied upon by the ALJ.  Indeed, at the hearing, Plaintiff's counsel conceded that Plaintiff's testimony did not specify that his migraines caused him to miss work.

Plaintiff last contends that the ALJ's error was not harmless because he is incapacitated by migraines multiple times a month and the vocational expert testified that were Plaintiff to miss three days of work per month, he would be unemployable.  Opening Br. at 13.  As explained above, the record is devoid of evidence that Plaintiff's migraines would preclude or limit him from working at the designated RFC, or that his limitations would cause him to miss three days of

16

work per month.  The ALJ addressed Natalia Matsumoto's opinion that Plaintiff

would miss work more than three times a week but discounted her opinion as "not

well supported or generally consistent with the overall record."  AR at 24.  He

reasoned that:

> [T]he claimant goes to public places, including the playground
> and the pool (Exhibits 4F/17; 13F/30).  While at those places, he
> is able to provide care and watch over his daughter.  (*Id.*)  Finally,
> the claimant's reported current activity of writing checks and
> maintaining business ties with long-time customers over the
> phone indicates that he can interact appropriately with others and
> complete simple tasks at the sedentary level.

*Id.*  In any event, Ms. Matsumoto's assessment concerning absences from work

exceeding three days per month was not based on Plaintiff's migraines.  It related

to his psychological impairments.  Plaintiff's argument places undue and

disproportionate focus on his migraines which, according to the record, were

considered *together with* his other impairments to determine his RFC.  *See* AR at

22–24.  Accordingly, to the extent Plaintiff argues that the ALJ ignored his

migraines altogether, the ALJ did not err, and substantial evidence supports his

findings regarding the medical evidence.

C.    Plaintiff's Credibility Regarding his Migraines

Plaintiff also argues that the ALJ erred by failing to consider his testimony

regarding the limiting effects of his migraines.  Opening Br. at 8.  In particular,

Plaintiff contends that the ALJ ignored his testimony that (1) once every week or

17

two he has bad headaches and places a washrag over his head in dark room and (2) migraines were one of the factors forcing him to relinquish duties for his family business.  Opening Br. at 15.

"Credibility determinations are the province of the ALJ."  *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989) (citation omitted); *see Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) ("[Q]uestions of credibility and resolutions of conflicts in the testimony are functions solely of the Secretary." (citation omitted)); *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007).  When the ALJ makes specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record, it is not the Court's role to second-guess the ALJ's decision.  *See Fair*, 885 F.2d at 604.  The Ninth Circuit has established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited:

> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.  In this analysis, the claimant is *not* required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.  Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof.

> If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by

18

> offering specific, clear and convincing reasons for doing so. This
> is not an easy requirement to meet: The clear and convincing
> standard is the most demanding required in Social Security cases.

*Trevizo*, 862 F.3d at 1000 (quoting *Garrison*, 759 F.3d at 1014–15) (footnote

omitted); *see Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (identifying

two-step analysis in assessing the credibility of a claimant's testimony regarding

the subjective pain or intensity of symptoms); *Vasquez v. Astrue*, 572 F.3d 586,

591 (9th Cir. 2009); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

That said, the ALJ need not "believe every allegation of disabling pain, or else

disability benefits would be available for the asking, a result plainly contrary to 42

U.S.C. § 423(d)(5)(A)." *Molina*, 674 F.3d at 1112 (quoting *Fair*, 885 F.2d at 603).

Credibility determinations must be made with sufficiently specific findings

to allow the court to conclude that the ALJ did not arbitrarily discredit a claimant's

testimony. *See Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (citing

*Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991) (en banc)). The

following factors are relevant in reviewing an ALJ's credibility findings, and are

also required by the SSA:

> (1) whether the claimant engages in daily activities inconsistent
> with the alleged symptoms; (2) whether the claimant takes
> medication or undergoes other treatment for the symptoms; (3)
> whether the claimant fails to follow, without adequate
> explanation, a prescribed course of treatment; and (4) whether
> the alleged symptoms are consistent with the medical evidence.

*Lingenfelter*, 504 F.3d at 1040 (footnote and citations omitted); *see Orn*, 495 F.3d at 636 (ALJs may consider the following factors in weighing a claimant's credibility:  "reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and 'unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment.'" (quoting *Fair*, 885 F.2d at 603) (other citation omitted)).

The ALJ opined that Plaintiff met the first step—whether Plaintiff presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged—and made no finding of malingering, but rejected his testimony about the intensity, persistence, and limiting effects of his symptoms:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

AR at 22.  Statements like this are routinely included in an ALJ's decision as a preface to a credibility determination.  *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (citations omitted).  But after this boilerplate language, "the ALJs typically identify what parts of the claimant's testimony were not credible and why."  *Id.* (citation omitted).  Although the ALJ

20

summarized Plaintiff's testimony, he did not specifically identify portions of this testimony that were not credible:

> During the hearing, the claimant stated that his health has progressively declined.  He reported that he has chronic pain and difficulty sleeping, which limits his ability to focus.  The claimant stated that he also has nausea and fatigue.  He stated that depression and irritability also interfere with his ability to interact with others.  The claimant stated that he has become withdrawn.  He alleged difficulties with concentration and memory.

AR at 22.  The ALJ also referenced Plaintiff's reports of pain.[8]  *Id.* ("*Though the claimant has reported significant pain since 2004*, he continued to work"; "*Despite his pain*, treatment notes show that the claimant could perform sedentary work" (emphases added)).  But "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (citations omitted); *Treichler*, 775 F.3d at 1102 (requiring ALJs to "specifically identify the testimony [from a claimant] she or he finds not to be credible and . . . explain what evidence undermines the testimony" (alterations in original) (citation omitted)).  This is because the "grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based[.]" *Treichler*, 775 F.3d at 1102 (citation omitted).

---

[8]  It is unclear whether these references pertain to his testimony or prior statements.

Instead of citing specific testimony, the ALJ acknowledged Plaintiff's reports of chronic pain, and offered the following evidence, which also supported his RFC determination, to refute the pain allegations:  medical evidence, continued work, and activities.  However, "[t]his is not the sort of explanation or the kind of 'specific reasons' we must have in order to review the ALJ's decision meaningfully, so that we may ensure that the claimant's testimony was not arbitrarily discredited."  *Brown-Hunter*, 806 F.3d at 494.  By failing to identify the testimony he found not credible, the ALJ did not link Plaintiff's testimony to the precise portions of the record supporting his non-credibility determination.  *See id.*; *see also Burrell v. Colvin*, 775 F.3d 1133, 1139 (9th Cir. 2014) (noting that the "ALJ never *connected* the medical record to [the] Claimant's testimony about her headaches" and rejecting the government's argument that the Claimant's history of treatment for headaches is a specific, clear, and convincing reason to support the ALJ's credibility finding because "[a]lthough the ALJ made findings . . . concerning [the] Claimant's treatment for headaches, he never stated that he rested his adverse credibility determination on those findings" (emphasis added)).

The Commissioner argues that the ALJ compared Plaintiff's pain allegations with the objective medical and other evidence.  But "providing a summary of medical evidence in support of a residual functional capacity finding is not the same as providing clear and convincing *reasons* for finding the claimant's

22

symptom testimony not credible." *Brown-Hunter*, 806 F.3d at 494.  The ALJ's articulation of the evidence supporting his RFC determination does not mean the Court can infer "that the ALJ rejected [petitioner's] testimony to the extent it conflicted with that medical evidence." *Id.* (citation omitted).   Where, as here, the ALJ has not *linked* Plaintiff's testimony with evidence contradicting the testimony, the Court is unable to ascertain whether the ALJ provided specific, clear, and convincing reasons for rejecting Plaintiff's testimony.  *See id.* ("We cannot review whether the ALJ provided specific, clear, and convincing reasons for rejecting Brown–Hunter's pain testimony where, as here, the ALJ never identified *which* testimony she found not credible, and never explained *which* evidence contradicted that testimony." (citation omitted)).

Although reasonable inferences could arguably be drawn from the ALJ's summary of the reasons for the RFC determination, the Court must limit its review to the reasons articulated by the ALJ.  *See id.* (citation omitted); *see also Treichler*, 775 F.3d at 1103 (explaining that the court cannot infer that the ALJ rejected the claimant's testimony because it conflicted with the medical evidence).  As the arbiter of credibility, the ALJ exclusively makes determinations; courts are limited to reviewing those determination.  *See Brown-Hunter*, 806 F.3d at 494.  Because the Court cannot speculate about the ALJ's bases for his conclusions or substitute the ALJ's conclusions with its own in deciding whether substantial evidence

supports the ALJ's decision, the ALJ's credibility determination must be reversed and remanded.  Only after that issue is resolved can a determination be made about whether the RFC is proper.

In sum, the Court AFFIRMS the Commissioner's decision insofar as it factored Plaintiff's migraines into the RFC determination and REVERSES as to the credibility determination.  The Court REMANDS the action for further proceedings consistent with this Order.  *See Trevizo*, 871 F.3d at 682.

## CONCLUSION

As set forth herein, the Commissioner's decision denying Plaintiff's application for social security disability benefits is AFFIRMED IN PART AND REVERSED IN PART.  This case is REMANDED for further administrative proceedings consistent with this Order.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaiʻi, May 26, 2020.



Jill A. Otake
United States District Judge

Civil No. 19-00538 JAO-RT; *Cooper v. Saul*; Order Affirming in Part and Reversing in Part Decision of Commissioner of Social Security and Remanding for Further Proceedings